UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL VAUPELL,<br><br>             Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | No.  2:13-cv-00074-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.[1]  In his motion for summary judgment, plaintiff principally contends the Commissioner erred by finding that plaintiff was not disabled from September 26, 2006, plaintiff's alleged disability onset date ("AOD"), through September 8, 2008, the date on which the Administrative Law Judge ("ALJ") determined plaintiff became disabled.  (ECF No. 19.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 22.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 23.)  For the reasons that follow, the court denies plaintiff's motion

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 9.)

1

for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

## I. BACKGROUND

Plaintiff, born July 20, 1974,[2] formally applied for DIB and SSI on October 12, 2006, and October 27, 2006, respectively. (Administrative Transcript ("AT") 17, 25.) Plaintiff alleged he was disabled as of September 26, 2006, due to impairments relating to diabetes that include but are not limited to: neuropathic pain, peripheral neuropathy, and retinopathy. (AT 17, ECF No. 1.) His applications "were denied initially on December 5, 2006, and upon reconsideration on May 23, 2007." (AT 17.) Plaintiff "filed a timely written request for hearing on July 17, 2007." (Id.)

On October 7, 2008, a hearing was held before an ALJ. (Id.) Plaintiff was represented by counsel, and he and his mother testified. (Id.) On March 25, 2009, the ALJ held that plaintiff was not disabled prior to September 8, 2008 but became disabled on that date. (AT 17-27.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 25, 2008. (AT 1-3.)

Plaintiff filed an action in district court to obtain judicial review of the Commissioner's decision. Vaupell v. Astrue, 2011 WL 675359 (E.D. Cal. February 16, 2011). On February 16, 2011, the court held that the ALJ did not properly consider plaintiff's treating physicians' opinion regarding the onset date of his disability, and remanded for further proceedings. Id. at *7.

On remand, the Appeals Council vacated the prior decision and directed the ALJ to offer the opportunity for another hearing, take any further action to complete the administrative record, and issue a new decision pursuant to the District Court order. (AT 1457.) Plaintiff, represented by counsel, appeared and testified at a hearing held on July 21, 2011. (Id.) A psychologist and a vocational expert also appeared and testified. (Id.) In a decision dated October 27, 2011, the ALJ again determined plaintiff was not disabled prior to September 8, 2008, but became disabled on that date. (AT 1469.) That decision became the final decision of the Commissioner when the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

Appeals Council denied plaintiff's request for review on December 20, 2012.  (AT 1436-39.) Plaintiff then filed this action to obtain judicial review of the Commissioner's final decision on January 14, 2013.  (ECF No. 1.)

## II.     ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether the ALJ followed Social Security Ruling 83-20; (2) whether the ALJ improperly discredited the testimony of plaintiff and his mother; (3) whether the ALJ improperly discredited plaintiff's treating physicians' opinions; (4) whether the ALJ considered the role of episodic absences in assessing plaintiff's residual functional capacity ("RFC"); and (5) whether plaintiff's RFC was based on substantial evidence.  (ECF No. 19.)

## III.    LEGAL STANDARD

This court reviews the Commissioner's decision to determine whether: (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV.    DISCUSSION

### A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to benefits pursuant to the standard five-step analytical framework.[3]  As an initial matter, the ALJ found that plaintiff met the insured status

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental

requirements of the Social Security Act through December 31, 2011. (AT 1459.) At the first step, the ALJ concluded plaintiff had not engaged in substantial gainful activity since September 26, 2006. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy, neuropathic pain, and diabetic retinopathy. (Id.) At step three, however, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 1460.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> Prior to September 8, 2008, the date the claimant became disabled, the undersigned finds, after careful consideration of the entire record, that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot perform work that requires close detailed tasks due to vision limitations.

---

impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1  (AT 1461.)

2  At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 1467.) At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, and determined there were a significant number of jobs in the national economy plaintiff would be able to perform. (Id.) Specifically, the vocational expert testified plaintiff could perform the following unskilled representative occupations: telephone quotation clerk; charge account clerk; and telemarketer. (AT 1468.)

The ALJ concluded that plaintiff was not disabled prior to September 8, 2008, but became disabled on that date and continued to be disabled through the date of the decision. (AT 1469.)

**B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations**

**1.   Whether the ALJ Followed Social Security Ruling ("SSR") 83-20**

SSR 83-20 lists the three main factors used to determine disability onset: (1) plaintiff's AOD; (2) plaintiff's work history; and (3) the medical evidence.[4] SSR 83-20 at *1. The AOD is the starting point, and the date on which the impairment caused the claimant to stop work is often significant in selecting the proper onset date; however, such factors are only significant when they are consistent with the severity of the condition(s) shown by the medical evidence, because medical evidence is the primary element in the onset determination. Id. at *1-2.

Plaintiff argues that the ALJ did not follow SSR 83-20 because the ALJ did not explicitly mention SSR 83-20 in his decision, explicitly identify the AOD as his starting point, or consider plaintiff's work history as relevant to the onset date.[5] (Pl.'s Mot. For Summ. J. 9-10.) Under SSR 83-20, however, stating that "SSR 83-20 is being applied" is not required, so failing to do so

---

[4] SSRs do not have the force of law, but courts give them some deference because they represent the Commissioner's interpretation of the agency's regulations. Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir.1991) (en banc)).

[5] Plaintiff also argues that the ALJ should have considered information provided by him and his mother or enlisted the services of a medical advisor. (Pl's Mot. For Summ. J. 10.) However, an ALJ need only seek additional information if the medical evidence in the record is insufficient to make a disability determination. SSR 83-20 at *3. In this case, there was enough evidence in the record to allow the ALJ to conclude that though severe, plaintiff's impairments did not rise to the disability level until September 8, 2008.

5

does not constitute a reversible error.  Furthermore, the ALJ's decision references plaintiff's AOD—which is also the date he stopped work—seven times, including the following passage:

> [T]he undersigned is persuaded that [the treating physicians'] statements were based upon… past relevant work as [claimant] performed it, heavy to very heavy, or as it is performed in the national economy, heavy, medium or light work. The undersigned concurs; given the combination of impairments, the claimant could not have returned to this level of exertional work. However, it is improbable to the undersigned, and as the evidence reflects, that as of the established onset date, September 26, 2006, the claimant was unable to perform any work activity.

(AT 1457-59, 1464-66.)

The ALJ's references to plaintiff's AOD create a reasonable inference that it was factored into his analysis.  Moreover, given that the foregoing passage followed a thorough analysis of medical evidence, the court is persuaded that SSR 83-20's relevant factors were weighed and considered.  The ALJ simply determined, based on substantial evidence, that plaintiff—while unable to perform past relevant work— was able to perform some work activity after the AOD, but before the date the ALJ determined plaintiff became disabled.

## 2. Whether the ALJ Improperly Discredited Plaintiff's Testimony

Plaintiff argues that the ALJ erred by assigning his testimony little weight because "[u]nder SSR 96.7p and 20 C.F.R. §§ 404.1529/416.929 and 404.1545/415/945, Mr. Vaupell's (and his mother's) statements *had* to be considered in formulating RFC." (Pl.'s Mot. for Summ. J. 15.)

Plaintiff's subjective statements and statements made by laypersons should be considered, but they need not always be accepted as true.  In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task in assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  [But t]he claimant … need not show that her impairment could reasonably be expected to cause the severity of

6

the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.

Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so….

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).

However, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The "ALJ must . . . identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Id. at 959.

In his decision, the ALJ noted plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AT 1462.) In response, plaintiff laments what he refers to as "template language," and cites Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012), to support his argument. (Pl.'s Mot. for Summ. J. 11.) While Bjornson speaks of boiler language in less than glowing terms, the decision to remand in that case was partly based on the fact that Bjornson's testimony was consistent with the medical evidence. See Bjornson, 671 F.3d at 649 (holding that the ALJ did not build a bridge between the medical evidence—including Bjornson's testimony, which appeared fully consistent with that evidence—and the conclusion). By contrast, here, plaintiff's testimony does not appear consistent with the medical evidence.

7

Plaintiff claimed during the hearing that he "had to stop working because of *chronic neuropathic diabetic **pain***[,]" and testified, in part, that during the period of time at issue:

> He was taking both OxyContin … and Oxycodone; he took Lyrica; he took Cymbalta; he received trigger-point pain injections at the [University of California, Davis Medical Center]; he had pain in his hands, he sometimes could not stand long enough to take a shower, he had pain in his eyes; he spent a lot of time lying down because of pain and testified about having to lie in the "turtle position" — on his back with his feet in the air, rubbing his feet — because of pain; he [also] described … developing shoulder pain from slumping over a cane he used for walking. During the period in question he was 30 or 40 pounds under his usual weight.

(Pl.'s Mot. for Summ. J. 3-7) (citations to the record omitted) (emphasis in original.)

On October 7, 2008, however, when asked why he chose not pursue a lighter job when his neuropathy worsened, rather than assert that his pain was entirely disabling, plaintiff responded "I, I, I couldn't, I was just, you know, getting vested in the union, it was union work[.]" (AT 50.) Moreover, the medical evidence appears inconsistent with plaintiff's characterization of the severity of his symptoms. On March 24, 2006, for example, plaintiff described his energy level as "excellent," said he was "doing yoga 60-75 minutes" daily, and denied experiencing any pain at that time. (AT 209.) Plaintiff's condition worsened to the extent that he no longer felt able to do heavy construction work, but his pain was still controlled by medication at that time. (AT 203-04). Moreover, on November 13, 2006, plaintiff stated that his energy level was pretty excellent, he was doing yoga 16 minutes each day, he denied having any pain, and he demonstrated good strength and coordination. (AT 200-04.)

Plaintiff then appears to have experienced what the ALJ described as "episodes of flares" in his condition. (AT 1465.) On November 29, 2007, plaintiff stated pain was constantly present and rated its intensity at 8 out of 10. (AT 327.) Additionally, plaintiff stated that he was only "able to walk one hour, sit for 30 minutes to an hour, and stand for one hour before pain became [a] limiting factor." (AT 328.) That statement notwithstanding, plaintiff's physician's assessment on that date noted that plaintiff's "diabetic peripheral neuropathy . . . appears to be well controlled on his current medication regimen," and recounted a previous recommendation

8

that plaintiff try a small dose of oxycodone "for breakthrough pain in addition to his long-acting opioid." (AT 327-28.) Plaintiff reported similar issues at a December 20, 2007 appointment, though by that time his pain dropped to an intensity of 4 out of 10. (AT 345-47.)

By January 28, 2008, however, plaintiff's condition appears to have normalized. On that date, plaintiff described his energy level as good, and said that he was doing "yoga for 15 minutes each day for exercise." (AT 355.) On January 30, 2008, plaintiff's physician noted that plaintiff had pain in his legs from neuropathy, but said that "[o]verall [plaintiff] is feeling better now that he is off narcotic pain medications." (AT 358-59.)

Moreover, whether or not plaintiff was under his normal weight during the relevant time period; weight never concerned his physicians. Plaintiff is described as well-developed and well-nourished on July 24, 2006, and January 28, 2008. (AT 210, 355.) On November 29, 2007, while experiencing a "flare" in his condition, plaintiff's physician noted no unplanned weight loss; and on January 28, 2008, plaintiff was said to have gained approximately 3 pounds since his last visit. (AT 328, 354.) Also on January 28, 2008, plaintiff's was reported as having a BMI of 24, which is well within the normal range. (AT 354.)

Accordingly, the court finds that the ALJ's credibility finding was based on the substantial evidence in the record that contradicts plaintiff's subjective characterization of his impairments.

### 3.   Whether the ALJ Improperly Discredited Plaintiff's Mother's Testimony

Plaintiff also argues that the ALJ erred in discrediting the testimony of plaintiff's mother, Ms. Vaupell. (Pl.'s Mot. for Summ. J. 13.) The ALJ gave two reasons for discrediting Ms. Vaupell's opinion: (1) it "is not an opinion from an acceptable medical source," and (2) her testimony was "similar to that provided by the claimant." (AT 1466.)

Generally, competent lay witness testimony cannot be disregarded without comment and reasons that are germane to each witness. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "the ALJ [need not] discuss every witness's testimony on an individualized, witness-by-witness basis. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citing Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 694 (2009)). Moreover,

though the applicable regulations require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, they do not require the ALJ to provide express reasons for rejecting testimony from each lay witness. See 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3).

The bulk of Ms. Vaupell's substantive testimony addresses three topics: plaintiff's vision problems, chronic pain, and blood sugar management issues. Ms. Vaupell testified, for example, that plaintiff "has a problem with chronic pain" and "peripheral and non-peripheral neuropathy," which causes "excruciating pain" at any given time. (AT 69, 71-72.) Ms. Vaupell also testified about plaintiff's vision problems, including surgical procedures and his progession towards legal blindness. (AT 70-71, 75-76.) Finally, Ms. Vaupell discussed plaintiff's difficulties controlling his blood sugar; highlighting the potential for dramatic and rapid swings. (AT 72-73.) Each of those issues was addressed in plaintiff's testimony. Plaintiff testified, for example, that he had "bad neuropathic pain, peripheral and, and non-peripheral" (AT 51); stated that his retinologist "had just recently determined me legally blind" (AT 49); and discussed his diabetes and issues with blood sugar management, including a low blood sugar reaction in Nevada City about which his mother also provided testimony. (AT 57-59, 73.)

The ALJ's second reason for discrediting Ms. Vaupell's opinion—that it was similar to plaintiff's—constituted, in and of itself, sufficient grounds to give no weight to her opinion. For the reasons stated above, plaintiff's testimony was discounted for specific, clear, and convincing reasons that are equally specific and germane to Ms. Vaupell's testimony. Accordingly, the ALJ was entitled to find Ms. Vaupell's similar testimony not credible for the same reasons he found plaintiff's testimony to be not credible. See Molina, 674 F.3d at 1115-22.

**4. Whether the ALJ Improperly Discredited the Opinions of Plaintiff's Treating Physicians**

The weight given to medical opinions depends, in part, on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by the supported opinion of an examining professional (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On appeal from the ALJ's initial decision, the district court remanded this case for further proceedings after concluding the ALJ did not properly weigh "Dr. Gocke's opinion that plaintiff was unable to work due to his medical problems, and failed to acknowledge Dr. Kreis' opinion that plaintiff was disabled by his pain." Vaupell, 2011 WL 675359 at *6. On remand, the ALJ addressed those opinions, but ultimately reached the same conclusion:

> [L]ittle weight is accorded to the opinions of treating sources, Dr. Gocke and Dr. Kreis as they are conclusory in nature, and do not meet the regulatory criteria to be an opinion, specifically they provide no information about what the claimant can do despite his impairments and what actual restrictions he faced. They are findings of disability, an issue reserved to the Commissioner…

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

11

> [and] opinions with regard to whether the claimant can return to his prior work, which the undersigned concurs, he could not continue preforming as of the established onset date, and say nothing with regard to his capacity to perform sedentary extertional work.

(AT 1465-66.)

In response, plaintiff argues that the ALJ again erred because:

> 1) Clearly Dr. Gocke pronounced disability and this decision's handling of *that* was already answered by this Court at page 1559 of the transcript, 2) The decision does not… demonstrate it *considered* pain (other than its previously mentioned acknowledgement of pain flares without considering them) and here is a *specialist* opinion about a frequency and intensity of pain that by any reasonable standard precludes all work, and 3) the many hundreds of pages of UCD records are rife with *other* "opinions" that had to be considered… with deference — just to begin with, there are all the *other* references to pain, and the difficulties of pain management.

(Pl.'s Mot. for Summ. J. 16.)

Plaintiff first argument is misguided, because while the district court concluded that the ALJ "failed to properly consider plaintiff's treating physicians' opinion regarding the onset date of his disability," and remanded for further proceedings, the court did not demand that the opinions be accepted as true. See Vaupell, 2011 WL 675359 at *7. An ALJ is not obligated "to accept as gospel" a medical opinion about disability. Stanistreet v. Chater, 21 F.Supp.2d 1129, 1136 (C.D. Cal. 1995). Rather, it is the *Commissioner* that determines whether the claimant is disabled based on the medical opinions in the record and all other relevant evidence. 20 C.F.R. §§ 416.927(b), 416.927(d)(1). In other words, the ALJ is not bound by Dr. Gocke's or Dr. Kreis' conclusions as they relate to plaintiff's ultimate disability status.

The ALJ reviewed plaintiff's medical history and determined that although his impairments were severe, they were "managed well with appropriate treatment and did not constitute disability until September 8, 2008, when plaintiff's "visual acuity met… Listing 2.02 of Appendix 1." (AT 1462-66, 1468-69.) That determination is supported by medical evidence in the record. For example, plaintiff was "started on elavil" in 2006, and was noted to have "gotten

1 significant relief from that[.]" (AT 203.)  Approximately one year later, on November 29, 2007,
2 it was noted that plaintiff's "neuropathy… appears to be well controlled on his current medication
3 regimen." (AT 328.)  On January 30, 2008, plaintiff's physician noted that plaintiff still had
4 neuropathic pain in his legs, "but [was] now off narcotics," (AT 359); and that "[o]verall is
5 feeling better now that he is off narcotic pain medications." (AT 358.)

6 Moreover, the ALJ's interpretation of Dr. Gocke's and Dr. Kreis' statements—that they
7 were referring to plaintiff's capability to perform his past work, not all work—deserves deference
8 because the court will uphold an ALJ's conclusion when evidence is susceptible to more than one
9 rational interpretation.  See Tommasetti, 533 F.3d at 1038.  In 2006, Dr. Gocke stated: "[Plaintiff]
10 is unable to work *at current job* due to neuropathy." (AT 204) (emphasis added.)   On September
11 13, 2007, Dr. Kreis stated: "[Plaintiff] is currently permanently disabled . . . [and] his
12 employment has been affected by the present pain condition.  *[Plaintiff's] current occupation is a*
13 *carpenter and other service jobs* which he . . . discontinue[d] secondary to his pain." (AT 992-
14 94) (emphasis added.)   Neither doctor opined as to whether plaintiff would be able to perform
15 sedentary work.  Accordingly, this court finds it reasonable to conclude, as did the ALJ, that Dr.
16 Gocke's and Dr. Kreis' statements were based solely upon plaintiff's past relevant work as he
17 performed it, heavy to very heavy, or as it is performed in the national economy, heavy, medium,
18 or light work.  (AT 1466.)

19 Given the inconsistency between the treatment notes and the pronouncement of disability,
20 and because plaintiff's physicians did not address whether he could perform less demanding (i.e.,
21 sedentary) work, the ALJ accorded greater weight to the state agency opinions, which concluded
22 in December 2006 that plaintiff "appear[ed] capable of light activities [with] visual limits." (AT
23 251-52.)  The state agency opinion was accompanied by a physical residual functional capacity
24 assessment, which found that plaintiff would be able to occasionally lift and/or carry twenty
25 pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of at least two hours
26 in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday, with
27 push and/or pull limits in plaintiff's lower extremities.  (AT 247.)  The RFC also found plaintiff
28 could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (AT 248.)  In a subsequent

case analysis, the reviewer stated, "I have reviewed the entire file… and I have affirmed the Sedentary RFC as written." (AT 323-24.)

Plaintiff's other arguments are equally unpersuasive. First, the ALJ's decision references plaintiff's issues with pain and pain management more than a dozen times, so to suggest that the ALJ did not consider pain appears inaccurate. (AT 1462-66.) Second, there is no indication that any opinion proffered by any party was ignored in the ALJ's decision. To the contrary, the ALJ discussed the plaintiff's testimony, his mother's testimony, and medical evidence from treating and non-treating sources. (Id.) But, as noted above, while some opinions are entitled to greater weight, see Holohan, 246 F.3d at 1201-02, that does not make them conclusive as to a physical condition or disability. Stanistreet, 21 F.Supp.2d at 1135. The ALJ determines the credibility of opinions, resolves ambiguity and conflicts in medical testimony, and may disregard a treating physician's opinion for reasons based on substantial evidence in the record. Edlund, 253 F.3d at 1156; Rodriguez, 876 F.2d at 762; 20 C.F.R. § 404.1527(d)(2). The ALJ properly made these determinations here. Accordingly, the ALJ did not err in weighing the medical evidence.

### 5. Whether the ALJ Considered the Role of Episodic Absences

Plaintiff next argues that the ALJ erred in not considering the role of episodic absences—resulting from "medical appointments, procedures and recovery therefrom, pain flares, and blood sugar episodes"—in assessing plaintiff's RFC because "the evidence *overwhelmingly* supports reversal on this ground alone. (Pl.'s Mot. for Summ. J. 12-13.) Plaintiff acknowledges, however, that the ALJ mentions pain flares in his decision:

> While there are *episodes of flares* in the claimant's conditions, as has been shown in the review of records above, the more constant findings are as appropriate medication management is reached, the claimant is doing well, and his reports of activities of daily living exhibiting a capacity to at least perform sedentary work with a limitation to accommodate his gradually declining vision.

(AT 1465) (emphasis added.)

Moreover, the decision also notes various medical appointments, procedures and recovery periods, and blood sugar episodes. (AT 1462-67.) Accordingly, the ALJ does appear to have

14

considered the role that medical appointments, procedures and recovery periods, pain flares, and blood sugar episodes played in plaintiff's ability to work *before* September 8, 2008; but, for the reasons stated above, reasonably determined that plaintiff was not impaired *until* September 8, 2008.

### 6. Whether the ALJ Based Plaintiff's Assessed RFC on Substantial Evidence

Plaintiff's final argument is that the ALJ did not adequately explain the RFC or ground it in substantial evidence. (Pl.'s Mot. for Summ. J. 10.) RFC is "the most [one] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4). For the reasons discussed above, the court finds that the ALJ met his burden; and, accordingly, concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence.

## V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

Dated: March 11, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15